## ORTMAN vs. DIXON.

*Tenth District Court for Yuba Co., April T.,* 1858.

### MINING DITCHES—PRIOR APPROPRIATOR.

*A.* constructed a saw mill upon the banks of a certain stream, which was propelled by
the waters of the stream. *B.* constructed a ditch above *A.*, and diverted the wa-
ters of the stream to certain mining claims, and there used it for mining purposes,
but recognized the right of *A.* as prior appropriator, and only diverted the waters
when not required at the mill. *A.* subsequently constructed another ditch above
*B.*, conveyed all the water to the same mining locality to which *B.* had conveyed
it, and there sold it to the miners. *B.* brought an action against *A.* to recover the
use and possession of the water.

*Held,* that *A.*, as prior appropriator, had a right to the use of the water as appropriated
at the time that *B.* built his ditch; that is, had a right to so much of it, at any
time, as was necessary for the turning of his saw mill; but that *B.* had a right to
it at all times when not actually used by *A.* for that purpose.

Action brought to recover the use and possession of the waters of a
certain stream which had been diverted by defendants. The necessa-
ry facts are fully reported in the opinion.

*Reardon, Smith & Mitchell,* for plaintiffs.

*Mesick & Swasey,* for defendants.

BARBOUR, J.—The plaintiffs in this case filed their complaint to re-
cover the use and possession of the water of Mill creek, and its tribu-
taries, for mining purposes; and to procure the judgment of this court
ordering and decreeing them the right of such use, as prior locators
and appropriators of the water flowing in the creek.

In the fall of 1851 the first ditch was constructed, designated on the
map filed as ditch No. 1, for the purpose of conveying the waters flow-
ing in Mill creek to *Atchison's* bar. *Ortman* first commenced the
digging of the ditch, and constructed it only a few rods. It was after-
wards extended by the miners in that locality to the claims on *Atchin-
son's* bar. It appears, when located, to have been used as common
property; no charge was ever made for the water it conveyed, and
the miners indiscriminately repaired the ditch, and took the water as

they required it to wash their dirt. It was not reputed or known to be the exclusive property of any particular owner, though, from the testimony, *Ortman* was the first to commence its excavation. Be this as it may (for the evidence is very conflicting), *Ortman* and all others have long since adandoned the use of this first ditch, and the case must be decided upon the subsequent acquired rights of the parties.

In January, 1852, the defendants took up the waters of the creek for mining purposes, and erected a saw mill, which they have owned ever since, and used the same from time to time. In 1853, *Louis Duhamel*, with two others, commenced the construction of a second ditch, marked "Ditch No. 2" on the map, at a point above defendants' millpond, and higher up the stream, by means of which they diverted the waters of the creek to the same mining claims as the first ditch did. *Duhamel & Co.* used the water which their ditch afforded at such times as the defendants were not engaged in running their mill, but desisted whenever the defendants had use for the water. The evidence very clearly shows that *Duhamel & Co.* recognized and acquiesced in the prior right of defendants to the water of this creek. Sometime in the year 1855, *Duhamel & Co.* sold this ditch to the plaintiffs, by which purchase they acquired all the rights and privileges possessed by *Duhamel & Co.*, and since that time have used the water for mining. The defendants, in the Fall of 1856, constructed a third ditch, still higher up the stream, and above the last mentioned ditch, No. 2, of the plaintiffs, through which they diverted all the water ordinarily flowing in the creek, and conveyed it to near the same mining claims as the other two ditches, which they disposed of to the miners. According to the settled decisions of our courts, there can be no doubt of the superior title of ditch No. 2 over ditch No. 3, to the use of the water for mining purposes, *were it not* that defendants claim and assert their right as first proprietors to use the water at a different place and for a different purpose than of sawing lumber. This presents a question of eminent importance to the ditch and mining interest of the state, and deserves consideration.

That the defendants have the first, and, consequently, paramount title, to use the waters for propelling the machinery of their mill there

can be no doubt. But can they go higher up and take the water from the stream, and convey it to a different place, for the purpose of selling it to miners? If so they can defeat the object for which they first intended it, and have ever subsequently applied it. I hold that it is not permissible for a party to abandon the use of water, which they have used as a motive power for turning a mill at a particular place, and then take the same water up and apply it at a different place for another purpose, when by so doing it will destroy a water privilege acquired by a second party, *before the abandonment of the first use.* The plaintiffs constructed their ditch No. 2, and used the water subject to the right of defendants. When the defendants were engaged in sawing, plaintiffs ceased to take water, and only appropriated it when the mill was idle. This seems to have been the understanding of both parties prior to the construction of the third ditch by defendants. But it is contended that a first locator may change the point of diversion without losing his present right. This, I grant, may often be done, but in so doing the rights of subsequent proprietors above him on the water course must not be impaired. In other words, he cannot divest himself of a right already acquired in order to assert title elsewhere to the prejudice of subsequent locators. Our supreme court has decided, and justly, that the owners of a ditch may extend it so as to convey water from where it was last used to other localities; and I have no hesitation in saying that the defendants in the case at the bar, might at any time previous to plaintiffs' constructing their ditch No. 2, have preserved the water used at their mill (which was off the stream) and taken it where they chose.

Applying these principles to the facts of the case, I arrive at the conclusion:

1. That the defendants, *Dixon & Co.*, are first entitled to the water flowing in Mill creek, for the use of their sawmill.

2. That the plaintiffs, *Ortman & Co.*, are entitled to the use of a sufficient quantity of the water of the stream as will fill and supply their ditch No. 2, at such times as defendants may not be using the same to propel their mill.

3. That the plaintiffs are entitled to the water to fill their ditch No. 2, in preference to the ditch of defendants, No. 3.

4. That when plaintiffs' ditch is filled according to its capacity to contain water, then if there remain any surplus of water flowing in the stream, the defendants are entitled to have such residuum.

5. That the costs of this suit be paid equally by both parties.

Let a decree be drawn in conformity to this opinion.